**In re Abe Samuel CURRIE (S.S. # 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), Debtor.**

**Charles N. MALONE, Trustee, Plaintiff,**

v.

**CELERON OIL & GAS COMPANY, United States of America Through the Farmer's Home Administration, United States Department of Agriculture, and Tomlinson Interest, Inc., Defendants.**

**Related Case No. 84-00184.**

**Adv. No. 84-0160.**

United States Bankruptcy Court, M.D. Louisiana.

Jan. 24, 1986.

Charles N. Malone, Baton Rouge, La., for plaintiff.

John Gaupp and Richard Launey, Asst. U.S. Attys., William E. Ryan, Houston, Tex., for trustee in bankruptcy of Tomlinson Interests, Inc.

C. Randall Loewen, Lafayette, La., for Celeron Oil.

**REASONS FOR JUDGMENT**

WESLEY W. STEEN, Bankruptcy Judge.

**I. Jurisdiction of the Court**

This is a proceeding arising under Title 11 U.S.C. The United States District Court

for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(K); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

## II. Facts

The facts in this adversary proceeding are stipulated:

1. The Debtor owned mineral rights in East Baton Rouge Parish, Louisiana;

2. On April 25, 1975, the Debtor granted a mineral lease with respect to those mineral rights;

3. The lease reserved to the Debtor one-eighth of all hydrocarbons produced by the lease;

4. On May 18, 1983, the Debtor purchased a house using FHA financing; to secure his obligation to repay the loan, the Debtor executed an "Assignment of Income From Real Estate Security" (hereinafter "the Assignment");

5. The Assignment purports to " . . . sell, assign, transfer, and convey to the Government . . . $370/per month of any and all rents, royalties, bonuses, payments, delay moneys, damages, and other income which may now be or hereafter become owing to the Borrower under the terms . . ." of the lease. The Assignment then states that "The Lessee . . . [is] hereby directed to pay to the Government the aforesaid percentage (sic) of all sums now owing or to become owing to the Borrower . . . until notified in writing by the Farmers Home Administration Supervisor of the termination of this assignment." Finally, the Assignment states that "This assignment shall terminate when the aforesaid indebtedness of the Borrower shall have been paid in full."

6. The Assignment was never recorded in the mortgage or conveyance records of East Baton Rouge Parish, Louisiana;

7. Mineral royalties have been paid and now are being held in escrow pending a determination of this adversary proceeding;

8. On March 16, 1984, the Debtor filed a voluntary Chapter 7 petition;

9. On December 4, 1984, the Trustee filed this adversary proceeding to avoid the Assignment.

## III. The Law

The Government argues that the Assignment is the transfer of a right to income from a mineral lease and need not be recorded. Presumably, the Government has focused on the words "sell, assign, transfer, and convey" and concludes that the document effects a transfer of the retained royalty.

The Trustee contends that the Assignment is more properly a pledge, presumably because the assignment terminated upon payment of the underlying indebtedness. A fair reading of the document does not lead one to conclude that the Debtor transferred ownership to the Government. Rather, one should conclude that the lessee was directed to pay the Government as security for an underlying obligation, until that obligation was satisfied; that is a security device, not a transfer.

But the classification of the Assignment is not critical. The result is the same in any event.

Rights to mineral royalty payments are involved. A mineral royalty is a mineral right: La.R.S. 31:80. A mineral right is an incorporeal immovable; "[a]ll sales, contracts, and judgments affecting mineral rights are subject to the laws of registry: La.R.S. 31:18. No contract subject to the laws of registry is effective against third persons unless and until filed for registry in the office of the parish recorder of the parish where the ... immovable is situated ...": La.R.S. 9:2721. No pledge of mineral rights or payments is effective against third parties until recorded: La.R.S. 9:4301, *et seq.;* La.R.S. 31:197, *et seq.*

The Trustee is entitled to the rights and powers of third parties to avoid transfers of property: 11 U.S.C. § 544. Sales, not mortgages, and pledges are all transfers: 11 U.S.C. § 101(48).

The Government cites *Dauzat v. Simmesport State Bank*, 167 So.2d 681 (3d Cir., 1964) as authority to the contrary. The case is not on point because it involves the assignment/pledge of a movable.

#### IV. Conclusion

The Trustee is entitled to judgment avoiding the transfer as prayed for. He will submit an appropriate judgment.